CALDWELL OIL CORPORATION, PETITIONER, v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 104240. Promulgated September 22, 1942.

*R. B. Cannon, Esq.*, and *Benjamin L. Bird, Esq.*, for the petitioner.
*Frank B. Appleman, Esq.*, for the respondent.

**OPINION.**

HARRON: *Issue 1.*—The question in this issue is whether the net proceeds in 1937 and 1938 from the sale of oil produced on the Fox lease is income of petitioner or of Caldwell. Under the assignments of November 2, 1936, and the agreement made by petitioner in 1937, Caldwell was to receive all of the net proceeds from oil and gas sold from the lease. The parties argue the question under the terms of the assignment of November 2, 1936, and it will be considered with respect to the terms thereof.

The facts are that Caldwell acquired an oil payment right, that is, the right to receive a specified sum out of the oil production, if, as, and when oil was produced, saved, and sold as the consideration for his payment for the costs of drilling and equipping the wells. The instrument in clear terms gave Caldwell an interest in the proceeds of a full seven-eighths working interest in all the wells, after deducting the necessary and actual expenses of operation, until the "proceeds of the interest" paid $44,024.03 plus 6 percent interest to Caldwell. While it is true that petitioner was to pay Caldwell proceeds up to a specified amount, such payments were to be made only

out of oil, if, as, and when produced. Caldwell so testified. There was no personal obligation in petitioner to make repayment to Caldwell, and there was no obligation in petitioner to make repayment from any other source. Further, the repayments were not to be made from petitioner's "net profits," as respondent contends. For example, there were certain outstanding liens against the Fox lease when petitioner acquired it, but the assignment did not provide that Caldwell was to receive proceeds from the sale of oil after deducting amounts necessary to take care of existing liens as well as operating expenses. Nor were any other items, such as developmental expense, to be deducted from the proceeds from the oil such as enter into the calculation of "net profits." The facts here do not bring this case within the rule of *Helvering* v. *O'Donnell*, 303 U. S. 370; *Helvering* v. *Elbe Oil Land Development Co.*, 303 U. S. 372; and *Anderson* v. *Helvering*, 310 U. S. 404.

The determination of the issue turns on whether or not Caldwell acquired an economic interest in the oil under the instrument relied on. It appears that respondent could not seriously contend that Caldwell did not obtain an economic interest, in the face of such authorities as *Palmer* v. *Bender*, 287 U. S. 551, and *Thomas* v. *Perkins*, 301 U. S. 655, and see also *Commissioner* v. *O'Shaughnessy, Inc.*, 124 Fed. (2d) 33, but for the provision that actual operating expenses were to be deducted from proceeds from the sale of oil. The weight of authority leaves little doubt, if any, that such provision is immaterial. First, the rule is now clear, as stated in the *O'Shaughnessy* case, *supra*, that:

* * * One who acquires by contract, in whatever form, a right to the production from an oil and gas well, *or the proceeds thereof until a stipulated amount has been paid*, without any other or further security except the contingency of the production, thereby becomes the owner of an economic interest in oil in place * * * . [Italics supplied.]

See also, *Hugh Hodges Drilling Co.*, 43 B. T. A. 1045, 1069:

* * * the owner of oil payment rights, who is required by the terms of the contract to look solely to the oil and gas or the proceeds from production for the agreed payments, has an economic interest in the oil and gas in place, is taxable upon the gross income derived from his interest, and is entitled to an allowance for depletion thereon.

In *Ortiz Oil Co.*, 37 B. T. A. 656, affd., 102 Fed. (2d) 508; certiorari denied, 308 U. S. 566, among the facts, most of which have a close similarity to the facts here, Ortiz, which executed an oil payment contract with persons who advanced money for the acquisition of property, and the drilling of wells, was to manage, develop, and operate the properties and pay all expenses. The Board found as a fact, p. 660, that "They [Westbrook and Thompson] had an 'overriding' interest, all expenses of development and operation being paid by

petitioner." The Board held (p. 664), that, in substance, the money furnished by Westbrook and Thompson was a cash consideration for the purchase of certain specified portions of the oil production, "to the extent of $359,333.34 in value, if, as, and when same should be produced," and that such portions of the production belonged to and constituted property of Westbrook and Thompson. The Board recognized that their portions of the oil runs was "net" to them, Ortiz paying all expenses. The Board and the court held that Westbrook and Thompson acquired an economic interest in the oil in place and that their right to share in the oil produced constituted an economic interest in the properties to the extent of the amount agreed upon. It is not necessary to set forth all of the facts of the *Ortiz* case, other than to point out that Westbrook and Thompson were entitled to receive certain portions of the proceeds of sales. The determining factor there was, and here is, that the persons who received rights to the proceeds of production from oil wells in consideration for advances, stood to be reimbursed only if oil was produced; otherwise, their money was lost. See also, *Transcalifornia Oil Co., Ltd.*, 37 B. T. A. 119.

While we believe it is immaterial that petitioner was to retain out of proceeds from the sale of oil enough to pay actual operating expenses, it is pointed out that under the assignment to Caldwell his right was not limited to a share in the proceeds of oil produced and sold, but was a right in the entire seven-eighths working interest in all of the wells. Petitioner was no more than an operator. In order to realize anything from the oil payment right, expenses had to be entailed to lift the oil and deliver it to pipe lines. In reality, petitioner retained no interest in the oil in place, but had only a reversionary interest to come back to it when and after Caldwell's right was exhausted. If petitioner had assigned to Caldwell a right to participate in only a share of the production, it is conceivable that the parties might have executed an operating contract under which operating and supervisory costs would be borne in proportion to their interests. Cf. *Taylor Hardwick Trust*, 44 B. T. A. 370 (reversed on a point not involved here). Under the facts it appears that petitioner was no more than an agent of Caldwell, its chief stockholder, to operate the lease. Whatever other questions this suggests we do not consider, because no other questions are in issue.

It is held that Caldwell's right to the oil payments constituted an economic interest in the oil in place and that the amounts which he received therefrom during the taxable years constituted gross income to him, not to petitioner. *Ortiz Oil Co.*, supra; *Hugh Hodges Drilling Co.*, supra; *Taylor Hardwick Trust*, supra; *Thomas* v. *Perkins*, supra.

*Issue 2.*—Respondent contends that petitioner is estopped from raising the above issue. Petitioner included in gross income in its returns for each taxable year the amounts of the oil payments paid to Caldwell. After the respondent determined the deficiencies, petitioner, by an amendment to its petition, alleged that the oil payments should be excluded from its income in each year. Caldwell did not report the oil payments in income in his returns. Petitioner contends that, even though the oil payments constituted Caldwell's income, nevertheless, he is not taxable upon the oil payments because they equaled his capital investment in the wells. That question, which is not in issue, is not considered, but see *T. W. Lee*, 42 B. T. A. 1217, 1228; affd., 126 Fed. (2d) 825, on the point of recoupment of cost out of production prior to reporting income from production.

Respondent raises the estoppel issue because he can not make any assessment against Caldwell for the years 1937 and 1938, more than three years having elapsed since the returns for those years were filed. Sec. 275 (a), Internal Revenue Code. The facts are that Caldwell's returns were filed when due, on March 15, 1938, and March 15, 1939. Petitioner filed the amendment to the petition on February 28, 1941, which was prior to the expiration of the period within which respondent could have made assessment of an income tax deficiency against Caldwell for both years. Also, the date of the hearing in this proceeding, October 8, 1941, was prior to the expiration of the assessment period for the year 1938. There is nothing in the facts to show that Caldwell, as president of petitioner and as an individual taxpayer, concealed any of the facts regarding the oil payments in question, from the respondent's agents, or misrepresented them. He put at the disposal of the agents the records of petitioner and himself. In petitioner's returns it is stated that its books are in the care of D. K. Caldwell. Also, Caldwell signed petitioner's returns as its president. Caldwell's returns bear the stamps of respondent's auditor, the return for 1937 having been audited April 28, 1939, and the return for 1938 having been audited January 26, 1940. The 1938 return of petitioner bears the stamp "Received—Audit Division—" under date of April 17, 1939. The record shows (Tr. 145) that the agent asked Caldwell for figures pertaining to his income and the corporation's income. Caldwell testified that, when respondent's agent came to his office to audit his return for 1937, he asked the agent to check petitioner's books, "since they both were related and had [*sic*] books all there in the office together."

The question is whether petitioner's mistaken course of conduct in including the oil payments in gross income in its returns, under a mistake of law, has estopped it from raising the question here. The respondent contends that he lost his right to assert a deficiency against

Caldwell because he relied upon the returns as filed. But this respondent must prove, "for estoppel is an affirmative defence." *Helvering* v. *Brooklyn City R. Co.*, 72 Fed. (2d) 274. It does appear now that some income may escape tax under the holding made in the main issue, but this is not because respondent was misled by petitioner's returns. The respondent was advised of petitioner's position in season to assess tax upon the income in question in the hands of Caldwell. Respondent, apparently with full knowledge of the facts, relied upon an erroneous theory of the law, to wit, that the oil payments constituted petitioner's income. His predicament is not due to reliance upon any misconduct or misrepresentation by petitioner, but to his own misconception of the law. Under the facts, respondent should have made his determination on the matter of whether the oil payments constituted income to Caldwell when he learned of petitioner's claim, and he should have assessed tax against Caldwell during the period allowed by the statute. As has been stated succinctly by the Circuit Court of Appeals for the Second Circuit, "if he wished to avoid the running of the statute, he must make up his mind for himself." *Helvering* v. *Sabine Chain Theatres, Inc.*, 121 Fed. (2d) 948; *Helvering* v. *Brooklyn City R. Co., supra.* Respondent makes no claim that petitioner concealed facts or made misleading statements. Respondent's plea of estoppel cannot be sustained, because he had knowledge of all the facts, as far as the record before us shows. He offered no proof to the contrary. See *Estate of Emma Frye*, 44 B. T. A. 835. Petitioner's failure to exclude the income in question from its return was due to a mistake of law and not to misrepresentation of fact. There is no basis here for estoppel. *Salvage* v. *Commissioner*, 76 Fed. (2d) 112; affd., 297 U. S. 106; *Estate of William Steele*, 34 B. T. A. 173.

By an affirmative pleading respondent alleged that petitioner's income for 1938 should be increased by the amount of $1,071.84 accrued interest on its note to Caldwell which was forgiven by Caldwell in 1938. Respondent has abandoned this issue, conceding it. Other issues raised by the pleadings are no longer issues to be considered in view of the holding under issue 1.